1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  TOMMY GARRISON, an individual; and CHRISTINE GARRISON, an individual,<br><br>12                              Plaintiffs,<br>13  v.<br>14  REGINALD BUDDY RINGGOLD, III<br>15  aka Rasool Abdul Rahim El, an<br>16  individual; ROSEGOLD<br>      INVESTMENTS, LLP, a Delaware<br>17  partnership; and MASTER<br>18  INVESTMENT GROUP, INC., a<br>19  California corporation,<br><br>                              Defendants. | Case No.:  19-cv-0244-GPC (DEB)<br><br>**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS**<br><br>**[DKT. NO. 57]** |

20
21
22        Before the Court is Plaintiffs' Motion for Terminating Sanctions, which the
23 Honorable Gonzalo P. Curiel referred to the undersigned for Report and Recommendation
24 pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c).  Dkt. Nos. 57, 59.  On June 4,
25 2020, the Court ordered Defendants Reginald Buddy Ringgold III ("Ringgold"), Rosegold
26 Investments, LLP ("Rosegold"), and Master Investment Group, Inc's ("MIG") to file their
27 oppositions to the motion by June 26, 2020, and for Plaintiffs to file a reply brief by July 3,
28 2020.  Dkt. No. 60.  No defendants filed an opposition.  Plaintiffs filed their Reply on

1

July 1, 2020.  Dkt. No. 66.  For the reasons discussed below, the Court RECOMMENDS that Plaintiffs' Motion for Terminating Sanctions be GRANTED with respect to Defendant Ringgold and DENIED with respect to Defendants Rosegold and MIG.

## I.     Procedural and Factual Background

### A.  Status of the Pleadings and Appearances by Defendants

On February 4, 2019, Plaintiffs initiated this suit alleging Defendants ran a fraudulent cryptocurrency investment scheme.   Dkt. No. 1.   Plaintiffs served their Complaint on all Defendants.  Dkt. Nos. 5, 7–8.  Ringgold appeared and is proceeding *pro se*, but neither Rosegold nor MIG responded to the Summons.  At Plaintiffs' request, the Clerk of the Court entered default against Rosegold and MIG.  Dkt. Nos. 12, 14.

On May 28, 2019, following the Court's partial grant of Ringgold's motion to dismiss, Plaintiffs filed a First Amended Complaint ("FAC").  Dkt. No. 17.  Rosegold and MIG again failed to respond, and the Clerk again entered default against them.  Dkt. Nos. 28–29.  Plaintiffs then filed and served a motion for default judgment against Rosegold and MIG.  Dkt. No. 30.  The Court granted the motion for default judgment, but later vacated it because liability for the defaulted and non-defaulted defendants rested on the same course of conduct and legal issues, and liability against the non-defaulted defendant had not been established.  Dkt. Nos. 37, 44 (*citing Frow v. De La Vega*, 82 U.S. 552, 554 (1872)).  On September 4, 2020, Plaintiffs filed an Amended Motion for Default Judgment against Rosegold and MIG.  Dkt. No. 68.

### B.  Ringgold's Alleged Loss of ESI and Computing Devices and Related Order

On November 20, 2019, Plaintiffs served their Request for Production (Set One) ("RFP") and Interrogatories (Set One) on Ringgold.  Dkt. No. 45-1, Decl. of William R. Restis in Supp. of Ex Parte Mot. for Determination of Disc. Dispute ("Restis Disc. Decl."), Ex. D, ¶5.  Plaintiffs requested that Ringgold produce his computers, Apple ID, and Google Play accounts for inspection so Plaintiffs could identify the crypto-asset related accounts, wallets, software, and crypto transactions with Plaintiffs or Plaintiffs' funds.  Dkt No. 45,
/ /

at 20–22[1], RFP Nos. 1–2. Plaintiffs also sought to inspect Ringgold's darkpool03@gmail.com and seeringgold@gmail.com email accounts to identify communications with or about Plaintiffs, and with or about digital securities or trading platforms. *Id.* at 22–25, RFP Nos. 3–4.

Plaintiffs' Interrogatories requested that Ringgold disclose account identifiers (such as account names, numbers and associated wallet addresses) for various crypto-asset accounts. *Id.* at 2–15, Interrog. Nos. 2–13. Plaintiffs also asked Ringgold to list his bitcoin and other cryptocurrency wallet addresses. *Id.* at 15–17, Interrog. Nos. 14, 15.

In response, Ringgold claimed that his email and crypto-asset accounts were "hacked" and that he no longer had access to any emails, crypto-asset accounts, or crypto wallets. *Id.*[2] He also represented that his "computer associated with th[ese] account[s] crashed and the hard drive fried a little over 8 months ago, so I no longer have access to th[ese] account[s] or its details that were on this laptop." *Id.*[3] Thereafter, Ringgold did not respond to Plaintiffs' requests to meet and confer, and failed to contribute to Plaintiffs'

---

[1] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

[2] Dkt. No. 45 at 2:19–23, Interrog. No. 2 (Ringgold states he no longer has access to the Coinbase account because "the email and phone number associated with the account [were] hacked and the password and 2FA phone number were changed."); *id.* at 3:23–25, Interrog. No. 3 (stating he no longer has access to the Bitmex account); *id.* at 4:21–24, 5:24–27, 6:26–7:1, 7:27–8:2, 9:1–6, 12:5–10, 14:16–21, 15:23–27, 17:3–5 Interrog. Nos. 4–8, 10–11, 13–15 (stating he no longer has access to the Hitbtc, Gemini, Etherdelta, Bitserial, Cryptonetix, Coinexchange, or Cryptoexchanger accounts or bitcoin or other cryptocurrency wallet addresses because these accounts were hacked "a little under a year ago"); *id.* at 20:21–23, RFP No. 1 ("All of the defendants crypto accounts have been hacked so the defendant no longer has access to any crypto related account and has not had access over the past year.").

[3] Dkt. No. 45 at 9:3–6, 12:7–10, 13:15–16, 14:18–21, 15:25–27, 17:5–7 Interrog. Nos. 8, 11–15.

filing of a discovery motion, as required by Magistrate Judge Michael S. Berg's Chambers Rules.[4]  Dkt. No. 45-1, Restis Disc. Decl., ¶¶ 6–10.

On March 19, 2020, Magistrate Judge Berg held a hearing on Plaintiffs' motion to compel.  Dkt. No. 53.  During this hearing, and in the written order that followed, Magistrate Judge Berg ordered Ringgold to: (1) produce documents; (2) respond to Plaintiffs' interrogatories; (3) produce his computers for inspection; and (4) provide further details about the claimed hack(s) and hard drive crash that purportedly prevented Ringgold from responding to Plaintiffs' discovery requests.  Dkt. No. 54 at 2; Dkt. No. 57-2, Decl. of William R. Restis in Supp. of Mot. for Terminating Sanctions ("Restis Sanctions Decl."), Ex. F.  Magistrate Judge Berg specifically warned Ringgold that his "failure to comply with any of these court orders or the Federal Rules of Civil Procedure may result in the imposition of sanctions, including monetary sanctions, evidentiary sanctions, and/or the dismissal or default of [his] case."  Dkt. No. 57-2, Restis Sanctions Decl., Ex. F, at 76:14–19; *See also* Dkt. No. 54 at 2:16–19 (**"Defendant Ringgold is hereby WARNED that failure to comply . . . may result in . . . evidentiary sanctions and/or terminating sanctions."**) (emphasis in original).  Despite Magistrate Judge Berg's order and warning, Ringgold produced nothing.  Dkt. No. 57-2, Restis Sanctions Decl., ¶ 7.

### C. Ringgold's Failure to Appear for Deposition

On January 22, 2020, Plaintiffs noticed Ringgold's deposition for February 4, 2020. Dkt. No. 57-2, Restis Disc. Decl., Ex. A.  Plaintiffs served and emailed the deposition notice to Ringgold and offered alternate dates for the deposition if he was not available on the noticed date.  *Id.* at Ex. B.  Plaintiffs' counsel sent another email to Ringgold on February 3, 2020, along with a courtesy copy of the deposition notice, reminding Ringgold that "your deposition will proceed tomorrow."  *Id.* at Ex. C.  Ringgold did not appear for

---

[4] This case was assigned to Magistrate Judge Berg from February 8, 2019 to May 27, 2020, when it was transferred to the undersigned.

his deposition.  *Id.* ¶ 5. After waiting 30 minutes, Plaintiffs' counsel noted Ringgold's failure to appear and concluded the deposition.  *Id.* at Ex. D ¶ 5.

## II.     Applicable Legal Authorities

Plaintiffs seek terminating sanctions against all three Defendants under: (1) Federal Rule of Civil Procedure 37(b); (2) Federal Rule of Civil Procedure 37(e); and (3) the Court's inherent power.  "Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).  Rule 37(b) allows for the imposition of sanctions for a party's failure to comply with discovery orders, and Rule 37(e) provides for sanctions for the spoliation of electronically stored information ("ESI").  District courts also have inherent authority to impose sanctions for "conduct which abuses the judicial process." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44–45 (1991); *see also TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) ("Courts have inherent equitable powers to dismiss actions or enter default judgments. . . ."); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Case No. 14-cv-1191-JLS (KSC), 2019 WL 6527951, at *5 (S.D. Cal. Dec. 4, 2019) (same).

District courts in this Circuit apply the preponderance of evidence standard when considering sanctions.  *See Weride Corp. v. Kun Huang*, Case No. 18-cv-07233-EJD, 2020 WL 1967209 at *9 (N.D. Cal. Apr. 16, 2020); *Crossfit*, 2019 WL 6527951, at *10; *Colonies Partners, L.P. v. Cnty of San Bernardino*, Case No. 18-cv-00420-JGB (SHK), 2020 WL 1496444, at *2 (C.D. Cal. Feb. 27, 2020); *Ramos v. Swatzell*, Case No. ED CV 12-1089-BRO (SPx), 2017 WL 2841695, at *5 (C.D. Cal. June 30, 2017).  In doing so, the court may make factual findings and assess the credibility of witnesses.  Fed. R. Civ. P. 52; *see also Valley Eng'rs v. Electric Eng'g Co*., 158 F.3d 1051,1054 (9th Cir. 1998) (finding willfulness was a fair inference from the fact that witness testimony was not credible).

/ /

/ /

## III.   Discussion

Plaintiffs contend that terminating sanctions are justified because: (1) Rosegold and MIG have failed to defend the case; (2) Ringgold failed to appear for his deposition; (3) Ringgold has destroyed evidence and refused to provide details related to the claimed loss of evidence despite being so ordered; (4) Ringgold has committed perjury; and (5) Ringgold is in contempt of Magistrate Judge Berg's order.  Dkt. No. 57-1 at 6–11.  The Court examines these allegations as the bases for sanctions under Rules 37(b)(2)(A) and 37(e)(2), and the Court's inherent authority.[5]

### A.  *Terminating Sanctions Against Ringgold*

#### 1.  *Rule 37(e)(2)*

Rule 37(e) states that spoliation of ESI occurs when ESI:  (1) "should have been preserved in the anticipation or conduct of litigation"; (2) "is lost because a party failed to take reasonable steps to preserve it"; and (3) "cannot be restored or replaced through

---

[5] One of Plaintiffs' stated bases for sanctions, that Ringgold committed perjury, lacks evidentiary support and, therefore, is not considered as a basis for terminating sanctions. Plaintiffs claim that Ringgold's response to RFP No. 4 (i.e., that he no longer has access to the seeringgold@gmail.com email account) is demonstrably false because "many months after Ringgold claimed his emails and other accounts were 'hacked,' he emailed Plaintiffs' counsel from the seeringgold@gmail.com account."  *Id*.; *comparing* Dkt. No. 45 at 20:19–23 ("hack" so no access "over the past year" [i.e., since January 2018]), *with* Dkt No. 45-1, Ex. E (Ringgold email from July 19, 2019).  Ringgold's response to RFP No. 4, however, simply indicates he lost access to the seeringgold@gmail.com account, without establishing when this occurred.  Dkt. No. 45 at 24:4–19.  Plaintiffs cite to Ringgold's response to RFP No. 1 as proof that he represented he lost access to this account one year prior.  Ringgold's response to RFP No. 1, however, is limited to his claimed loss of access to crypto asset accounts and also does not establish a date when Ringgold's claimed loss of access to seeringgold@gmail.com occurred.  *Id*. at 20:21–23 ("All of the defendants crypto accounts have been hacked so the defendant no longer has access to any crypto related account and has not had access over the past year.").  The Court's review of the record has not identified any statement by Ringgold regarding when he lost access to the seeringgold@gmail.com account.  The Court, therefore, cannot conclude Ringgold perjured himself.

additional discovery."  Fed. R. Civ. P. 37(e).  If ESI is spoliated and a party "acted with the intent to deprive another party of the information's use in the litigation," then Rule 37(e)(2) authorizes the imposition of more severe sanctions, including termination, if the Court finds "the party acted with the intent to deprive another party of the information's use in the litigation." *Weride Corp*., 2020 WL 1967209 at *9.

A party's destruction of evidence qualifies as willful spoliation if he had "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006).  "[T]here is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)." *Weride Corp*., 2020 WL 1967209 at *9.  "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."  Fed. R. Civ. P. 37(e)(2) (advisory committee's note to 2015 amendment).

Plaintiffs' initial Complaint identifies specific crypto-asset accounts, transactions and email addresses that are at issue in this litigation.  Dkt. No. 1, ¶¶ 16–19, 33, 36, 56, 59, 66.  Ringgold, therefore, had notice of his obligation to preserve ESI related to these matters no later than February 4, 2019, when he was served.  Dkt. No. 5.

But Ringgold has not produced *any* documents or electronic devices in response to Plaintiffs' discovery requests.  Dkt. No. 57-2, Restis Sanctions Decl., ¶ 7.  Ringgold explained his failures by claiming his accounts were hacked and his computing devices were destroyed.  Dkt. No. 45 at 20–24, RFP Nos. 1–4; *id.* at 2–17, Interrog. Nos. 2–15.  Because he failed to appear for his deposition, however, the only information regarding the alleged hacks and loss of information and computing devices is contained in Ringgold's written discovery responses.  The responses contain very little detail about the timing or circumstances of the information loss.  But it is clear that much, if not all, of the ESI existed well after Ringgold was served with this lawsuit on February 4, 2019.  In his January 6, 2020 response, Ringgold stated that his "computer associated with th[ese] account[s]

crashed and the hard drive fried a little over 8 months ago….." Dkt. No. 45 at 9, 12-15, Interrog. Nos. 8, 11–15. Ringgold also claimed that other accounts were hacked, and information related to these accounts was lost "a little under a year" before his January 6, 2020, responses, placing the timing of that information loss at or very near to Ringgold's notice of this lawsuit. Dkt. No. 45 at 4–7, 10–11, Interrog. Nos. 4-7, 10. Additionally, on July 19, 2019, four and a half months after the lawsuit was filed, Ringgold used seeringgold@gmail.com, one of email accounts he now claims he cannot access. Dkt. 45-1, Ex. E.

Based on the foregoing, it is clear that Ringgold either has lost or has willfully failed to produce ESI that he was required to preserve and produce in this litigation. Furthermore, because Ringgold did not appear for his deposition, has not produced the allegedly hacked computing devices for inspection, or otherwise cooperated in Plaintiffs' efforts to obtain the ESI to which they are entitled, no alternative methods for restoring or replacing the allegedly lost ESI are available.

With spoliation of ESI now established, the Court next addresses whether Ringgold "acted with the intent to deprive [Plaintiffs] of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Rule 37(e)(2) does not define "intent"; however, the Advisory Committee notes state that "[n]egligent or even grossly negligent behavior" is insufficient. Fed. R. Civ. P. 37(e)(2) (advisory committee's note to 2015 amendment). Consistent with this, courts have found a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows, or it is reasonable to infer, that the party purposefully destroyed evidence to avoid its litigation obligations. *See Colonies Partners, L.P.*, 2020 WL 1496444, at *9-10 (finding defendant acted with intent when, after the litigation commenced, he deleted text messages pertaining to the ligation, as well an email account that he used when the litigation commenced); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, Case No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit agreement to avoid communicating electronically," which

"suggest[ed] a shared intent to keep incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc*., 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc*., 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the plaintiff's conduct was intentional under Rule 37(e) where the evidence showed that the plaintiff either purposefully deleted e-mails that showed she might have fabricated the existence of a report that was critical to her lawsuit, or purposefully failed to take any steps to preserve the e-mails).

Here, Ringgold failed to produce any ESI, documents, or computing devices.  He also failed to provide any meaningful details regarding the purported loss of all ESI sought by Plaintiffs, despite being ordered to do so, and despite being warned that his failure to do so could result in evidentiary or terminating sanctions.  Additionally, Ringgold failed to appear for his deposition, where Plaintiffs' counsel could have questioned him under oath about the alleged loss of the ESI.  The Court, therefore, finds that Ringgold's statements regarding the complete loss of all relevant information and computing devices are not credible.  The Court's conclusions about Ringgold's credibility are reinforced by the Court's finding in a related case that Ringgold willfully deceived the Court by filing forged witness declarations.  *Sec. Exch. Comm'n v. Blockvest, LLC*, Case No. 18-cv-2287-GPC (DEB), 2020 WL 2786869, at *9, Dkt. No. 117 at 17.  Thus, the Court finds that Ringgold intentionally destroyed the requested ESI with the intent to deprive Plaintiffs of the use of this evidence in this case, and that sanctions are warranted under Rule 37(e)(2).

### 2. Rule 37(b)(2)(A)

Under Rule 37(b)(2)(A), "[i]f a party . . . fails to obey an order to provide or permit discovery . . ., the court where the action is pending may issue further just orders."  The orders "may include . . . striking pleadings in whole or in part; . . . dismissing the action[;] or . . . rendering default judgment against the disobedient party."  Fed. R. Civ. P.

37(b)(2)(A)(iii), (v)–(vi).   "[W]here the drastic sanctions of dismissal or default are imposed, . . . the losing party's noncompliance must be due to willfulness, fault, or bad faith."   *Fjelstad v. Honda Motor Co., Inc.*, 762 F.2d 1334, 1337 (9th Cir. 1985) (quoting *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981)).   The willfulness standard is met by disobedient conduct that is within the offending party's control.   *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).

Here, Magistrate Judge Berg ordered Ringgold to produce his "fried" computer for inspection and provide supplemental discovery responses containing further details about the claimed hacking of his accounts and hard drive crash.   Dkt. No. 54.   Ringgold did not comply with Magistrate Judge Berg's order.   Dkt. No. 57-2, Restis Sanctions Decl., ¶ 6. There is no basis in the record to conclude that Ringgold's failure to comply with Magistrate Judge Berg's order was anything other than willful.   The Court, therefore, finds that sanctions are also appropriate under Rule 37(b)(2)(A).

### 3. Inherent Authority

Courts have inherent authority to impose sanctions for "conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44–45.   A court may impose sanctions, including default or dismissal, when a party has "willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Fjelstad,* 762 F.2d at 1338; *see also TeleVideo Sys., Inc.*, 826 F.2d at 916 ("Courts have inherent equitable powers to dismiss actions or enter default judgments. . . .").   Terminating sanctions are a severe remedy, and should be imposed only in extreme circumstances, "where the violation is 'due to willfulness, bad faith, or fault of the party.'"   *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (quotation omitted); *see also Anheuser-Busch, Inc. v. Nat. Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995) (finding terminating sanctions are warranted where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.").

As discussed, Ringgold has obstructed Plaintiffs' efforts to conduct discovery by his failure to appear for deposition, failure to provide substantive interrogatory responses,

failure to produce his computer and accounts for inspection, spoliation of evidence, and failure to comply with Magistrate Judge Berg's order.  Ringgold's conduct is willful, in that his intent is clearly to frustrate the purpose of this litigation.  The Court's inherent authority, therefore, provides another basis for imposing sanctions.

### 4.  Five Factor Test for Terminating Sanctions

The Court next considers whether terminating sanctions, in the form of striking Ringgold's Answer and entering default,  are appropriate to redress the conduct discussed above.  Courts must consider the following factors in deciding the appropriateness of terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions: (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv*., 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986)).  This is not a rigid, mechanical test but "a way for a district judge to think about what to do. . . ." *Valley Eng'rs,* 158 F.3d at 1057 (The test is "not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof.").  "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a . . . dismissal sanction.  Thus the key factors are prejudice and the availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Factors one and two are usually reviewed together. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 460 F.3d 1217, 1227 (9th Cir. 2006).  The public has an overriding interest in securing "the just, speedy, and inexpensive determination of every action." *Id*.  Consistent with this objective, courts have the authority to manage cases in order to expedite their disposition, discourage wasteful pretrial activities, improve the quality of the trial through more thorough preparation, and to facilitate settlement. *Id.*

The public's interest in expeditious resolution and the Court's interest in managing its docket strongly favor terminating sanctions here.  Ringgold's refusal to produce the

essential discovery in this case has made an expeditious resolution on the merits impossible, with the result that this case has now been pending on the Court's docket for more than 18 months without meaningful progress.  Conversely, the public's interest in a resolution of the merits is not strongly implicated here because Ringgold has impeded Plaintiffs' efforts to timely ascertain critical facts and frustrated any possibility of resolving this case on the merits, with the relevant facts presented.  *In re Phenylpropanolamine,* 460 F.3d. at 1228  (While public policy in favor of disposition of cases on their merits typically weighs against terminating sanctions, this factor "lends little support" to a party whose conduct impeded progress toward disposition of the case on the merits.)  The Court, therefore, next considers the key factors, prejudice and the availability of lesser sanctions.

A plaintiff "suffers prejudice if [a party's] actions impair the [opposing party's] ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  Here, Ringgold's spoliation of evidence, failure to appear for deposition, and failure to comply with Magistrate Judge Berg's order have gravely interfered with Plaintiffs' ability to ascertain facts to support their claims and obtain a decision in this case.  This prejudice to Plaintiffs, therefore, weighs heavily in favor of terminating sanctions.  *See id.* (finding the repeated failure of the plaintiffs to appear at scheduled depositions compounded by their continuing refusal to comply with court-ordered production of documents constituted an interference with the rightful decision of the case and warranted default); *Wanderer*, 910 F. 2d at 656 (finding defendants' failure to appear at their depositions "compounded by repeated noncompliance with court orders to produce documents constituted a clear interference with the plaintiffs' ability to prove the claims and to obtain a decision in the case.").

Regarding the availability of lesser sanctions, reviewing courts consider whether the district court discussed the feasibility of less severe sanctions, imposed alternative sanctions prior to ordering dismissal, or warned the party that dismissal was a potential sanction prior to ordering the same.  *Anheuser-Busch, Inc*., 69 F.3d at 352.  In egregious circumstances, however, "it is unnecessary (although still helpful) for a district court to

12

discuss why alternatives to dismissal are infeasible." *Dreith v. Nu Image, Inc*., 648 F.3d 779, 788–89 (9th Cir. 2011) (quoting *Malone*, 833 F.2d at 132).  Terminating sanctions may also be imposed when lesser sanctions would not deter future wrongdoing.  *See Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116-17 (9th Cir. 2004) ("[I]t is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."); *see also Sun World Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 391 (E.D. Cal. 1992) (imposing terminating sanctions because plaintiff's track record indicated that any lesser sanction would be an exercise in futility).

The Court finds that lesser sanctions are inadequate here.  A monetary sanction cannot redress the destruction of key evidence.[6]  Likewise, evidentiary or issue preclusion sanctions are not appropriate because Ringgold's misconduct and willful deception concerning key issues in this litigation has rendered it impossible for the Court to have confidence that Plaintiffs will ever have access to evidence that is directly relevant to their claims.  Ringgold's obstruction of their discovery efforts and spoliation of evidence has interfered egregiously with the administration of justice and cannot be sufficiently redressed by evidentiary or issue preclusion sanctions. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007) (rejecting lesser sanctions, where defendants' "pattern of deception and discovery abuse made it impossible for the district court to conduct [a] trial with any reasonable assurance that the truth would be available."); *see also Anheuser-Busch, Inc*., 69 F.3d at 352 ("[D]ismissal is appropriate where a 'pattern of deception and discovery abuse made it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available."); *Sec. &*

---

[6]  The Court also notes that Ringgold is unlikely to pay a monetary sanction. On November 1, 2019, District Judge Curiel ordered Ringgold to reimburse Plaintiffs for attorney fees incurred in filing their Anti-SLAPP motion as to counterclaims asserted by Ringgold.  Dkt. No. 41 at 9. As of the filing of Plaintiffs' Motion for Terminating Sanctions, Ringgold has not remitted payment.  Dkt. No. 57-2, Restis Sanctions Decl., ¶ 9.

*Exch. Comm'n v. Lee*, Case No. 14-CV-0347-LAB (BGS), 2017 WL 127977, at *2 (S.D. Cal. Jan. 12, 2017) (imposing terminating sanctions against defendants whose "bad faith and willful misbehavior have successfully delayed the SEC's recovery, and imposed costs on the SEC. Denying relief or giving them another chance would simply reward [defendants'] misconduct. The interests of justice forbid granting [defendants] any more opportunities to engage in any more of the same misbehavior.").

Furthermore, while a warning is not always necessary, Magistrate Judge Berg expressly warned Ringgold that his failure to produce his computer for inspection and to meaningfully respond to Plaintiffs' discovery requests could result in sanctions, including terminating sanctions. Dkt. No. 54. Ringgold failed to heed that warning, and the Court now recommends imposition of that sanction.

### B. *Terminating Sanctions Against Rosegold and MIG*

The only allegation Plaintiffs make with regard to Rosegold and MIG is that they failed to appear in this case. Dkt. No. 57-1 at 6-7. This is not sanctionable conduct. Furthermore, even if terminating sanctions were appropriate with respect to these two defendants, the appropriate redress would be the entry of default, which Plaintiffs have already obtained under Fed. R. Civ. P. 55. *See* Dkt. No. 29.

### IV.    **Conclusion**

The Court recommends GRANTING Plaintiffs' Motion for Terminating Sanctions with respect to Ringgold and entering default as to this defendant. The Court recommends DENYING Plaintiffs' motion as to Rosegold and MIG.

Any objections to this Report and Recommendation must be made in writing and filed with the Court and served on all parties no later than **September 28, 2020**. This document should be captioned "Objections to Report and Recommendation." Failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

/ /

/ /

1    Any reply to the objections must be filed with the Court and served on all parties no

2  later than **October 5, 2020**.

3    IT IS SO ORDERED.

4  Dated:  September 11, 2020

5

6    Honorable Daniel E. Butcher
     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19-cv-0244-GPC (DEB)